Frank William WADE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00230–CR.

Court of Appeals of Texas,
Texarkana.

Submitted July 5, 2002.

Decided July 11, 2002.

Lew Dunn, Longview, for appellant.

Andy Porter, Assistant District Attorney, Longview, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Frank William Wade pled guilty to possession of marihuana in an amount greater than four ounces, but less than five pounds. On April 27, 1995, the trial court sentenced him to eight years' imprisonment, but suspended the imposition of his sentence and placed him on eight years' community supervision.

On March 4, 1996, the State moved to have the trial court revoke Wade's community supervision, alleging he violated eight of its terms. On March 1, 1996, the trial court signed an order for Wade's arrest. A capias was issued on March 6, 1996. The capias was executed on October 2, 2001, after Wade was arrested in Arkansas.

On October 18, 2001, the State filed an amended motion to revoke Wade's supervision. At a hearing on November 5, 2001, Wade pled not true to the allegations contained in the motion to revoke. The trial court found the allegations true, revoked Wade's community supervision, and sentenced him to eight years' imprisonment.

On appeal, Wade contends he was denied his right to a speedy revocation hearing under the United States and Texas Constitutions because the State did not use due diligence in bringing him to trial. He also contends the evidence was legally and factually insufficient to revoke his community supervision.

In its amended motion to revoke Wade's community supervision, the State alleged that, from December 1995 through October 2001, Wade failed (1) to report to his supervision officer; (2) to maintain his residence in Shelby County, Tennessee; (3) to pay a $25.00 per month supervision fee; (4) to pay court costs of $124.00 at the rate of $10.00 per month; (5) to pay his court-appointed attorney $275.00 at the rate of $10.00 per month; (6) to pay a fine of $500.00 at the rate of $10.00 per month; (7) to inform his supervision officer in advance of any change of residence; and (8) to perform four hours of community service per month.

Melinda Hieber, Wade's supervision officer from April 1995 to July 2000, testified Wade had not completed any community service since he was placed on community supervision. She testified that during the same period $330.00 had been received by the community supervision office on Wade's outstanding debt (i.e., court costs, supervision fees, court-appointed attorney costs, and fines) of $2,659.50. She further testified to the following credits applied during the same period: (1) $80.00, credited against the amount owed for court costs, (2) $50.00, credited for court-appointed attorney costs; and (3) $50.00, credited for his fine.

Hieber also testified she received notice from Wade in July 1995 that he was in jail in Tennessee on another charge. She sent report forms to the jail, but the forms were returned because Wade had been released in late July 1995. She testified she sent a letter to his address in Memphis, Tennessee, but did not receive a response. In April 1996, she received a report showing Wade was in jail in Arkansas.

Benji Rodgers, Wade's supervision officer after July 2000, testified he has not received any payment for Wade's court costs, fine, court-appointed attorney costs, or supervision fees. He also testified he had not received notice that Wade completed any community service. He further testified he did not receive notice that Wade was changing his residence in Tennessee.

Wade testified he was imprisoned in Tennessee four days after returning there from Gregg County, Texas. He testified he was in jail four to six months in Tennessee and was then extradited to Arkansas. He was incarcerated three or four months in Arkansas on another charge. He was released from jail in Arkansas in the middle of 1996. He lived in Arkansas until he was arrested and returned to Gregg County.

## Speedy Trial

◼ Wade first contends he was denied his right to a speedy revocation hearing under the United States and Texas Constitutions because the State did not use due diligence in bringing him to trial. We disagree.

◼ The right to a speedy trial guaranteed by the Constitutions of the United States and Texas is applicable to probation revocation proceedings. *Carney v. State,* 573 S.W.2d 24, 26 (Tex.Crim.App.1978). Whether an accused has been denied the right to a speedy trial is determined with reference to the balancing test outlined in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101, 117 (1972), using factors such as (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant resulting from the delay. *Carney,* 573 S.W.2d at 26–27.

Wade did not raise the speedy trial issue in the trial court, but contends the issue was raised per se by the length of the delay. In *Barker,* the United States Supreme Court held that whether the defendant asserted the right to a speedy trial is one factor to be considered in evaluating whether he or she was denied the right to a speedy trial. *Barker,* 407 U.S. at 528, 92 S.Ct. 2182.

There is a division of authority concerning whether a defendant can raise a speedy trial claim for the first time on appeal. Some courts have considered the appellant's speedy trial claim though the defendant did not raise the claim in the trial court. *See Easley v. State,* 564 S.W.2d 742, 745 (Tex.Crim.App.1978) (appellant asserted his speedy trial rights for the first time over a year after his trial);

*Ross v. State,* 523 S.W.2d 402, 404 (Tex. Crim.App.1975); *Archie v. State,* 511 S.W.2d 942, 943 (Tex.Crim.App.1974); *McKinney v. State,* 505 S.W.2d 536, 542 (Tex.Crim.App.1974). None of these cases, however, reversed the defendant's conviction. *But see Hardesty v. State,* 738 S.W.2d 9, 10 (Tex.App.-Dallas 1987, pet. ref'd) (court of appeals reversed defendant's conviction even though he only raised statutory speedy trial rights in the trial court).

Other courts have refused to consider a speedy trial claim that was not asserted in the trial court. *See Mulder v. State,* 707 S.W.2d 908, 914 (Tex.Crim.App.1986); *Fraire v. State,* 588 S.W.2d 789 (Tex.Crim. App.1979); *Oldham v. State,* 5 S.W.3d 840, 846 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Guevara v. State,* 985 S.W.2d 590, 592 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Ramirez v. State,* 897 S.W.2d 428, 431 (Tex.App.-El Paso 1995, no pet.); *Serna v. State,* 882 S.W.2d 885, 889–90 (Tex.App.-Corpus Christi 1994, no pet.); *Jones v. State,* 740 S.W.2d 497, 498 (Tex.App.-Dallas 1987, pet. ref'd); *Vasquez v. State,* 694 S.W.2d 56, 57 (Tex.App.-Corpus Christi 1985, pet. ref'd); *Taylor v. State,* 666 S.W.2d 157, 159 (Tex.App.-Houston [14th Dist.] 1983, pet. ref'd). We note this line of cases is led by the more recent rulings on the subject from the Texas Court of Criminal Appeals.

The few cases considering an appellant's speedy trial claim for the first time on appeal have done so because of the *Barker* language that assertion or failure to assert a speedy trial claim is only one factor to be considered in determining whether the defendant has been denied a speedy trial. *See Barker,* 407 U.S. at 528, 92 S.Ct. 2182. The United States Supreme Court in *Barker* was faced not with an appellant who was asserting his speedy trial claim for the first time on appeal, but one who had delayed until trial the assertion of his speedy trial right. The *Barker* opinion discussed and rejected the previously expressed principle that "a defendant waives any consideration of his right to speedy trial for any period prior to which he has not demanded a trial." *See id.* at 525, 92 S.Ct. 2182. There is no indication the *Barker* court intended to abrogate the long-standing rule requiring a defendant to object at trial in order to preserve the issue on appeal.

We believe the better rule, i.e., issue is waived unless raised at or prior to trial, is in line with the more recent results from the Texas Court of Criminal Appeals and is not inconsistent with *Barker.* The factors outlined in *Barker* cannot be fully evaluated on appeal unless a full record is developed on the question. In *Newcomb v. State,* 547 S.W.2d 37, 37 (Tex.Crim.App. 1977), the trial court held a revocation hearing about seven months after the motion to revoke was filed. The defendant did not assert a speedy trial claim in the trial court, but on appeal contended his speedy trial rights were violated as a matter of law. *Id.* at 38. The Texas Court of Criminal Appeals, noting that the appellant did not raise a *Barker v. Wingo* issue either in the trial court or on appeal, wrote:

> We decline to address the issue sua sponte and thereby also decline to establish precedent for considering unassigned Barker v. Wingo error in every case where there has been a delay of the duration shown in this case. If we were to consider this issue, which by nature of the applicable balancing test requires a full development of the facts, on our own motion, it would be necessary to abate the case for a full hearing on the matter. We could not render a considered judgment on the matter without a fully developed record, and this is particularly so where, as here, the parties never made it an issue, did not present evidence on the matter, and would have

been utterly without notice, prior to judgment in this Court, that a binding judgment between the parties would be entered on the matter. We are not saying that we would order a hearing if the issue were asserted without prior development in the record, but only that no judgment on the merits of the issue sua sponte should be entered without an evidentiary hearing first.

*Id.*

In the present case, Wade questions specifically why he was not held on the Gregg County warrant in Arkansas after his release from jail in 1996. He contends the reason is "most likely" due to the State's failure to disseminate the warrant to the law enforcement community in other jurisdictions. This is precisely the type of issue that would have been developed had he raised his speedy trial claim in the trial court. Having failed to do so, we believe Wade has waived consideration of the issue on appeal.

■ Even in the absence of that waiver, we are unwilling to reverse based on the speedy trial issue. We so conclude because an evaluation of the *Barker* factors does not reveal Wade's right to a speedy trial was violated, even assuming the State's failure to apprehend him upon his release from jail in Arkansas was blameworthy in some respect.

True, the revocation hearing was held five years and eight months after the motion to revoke was filed. During all but approximately one month of that delay, however, Wade was free or was confined for other charges unrelated to the current matters. Even if the State was blameworthy in failing to apprehend Wade when he was released from prison in Arkansas in mid 1996, approximately five years and three months of the additional delay was due in large part to the fact that Wade had failed in his duty to report his location to the authorities in Gregg County.

In addition, Wade not only failed to assert the speedy trial right until now, but also "laid low" during most of the delay, ignoring his duties under his community supervision. Finally, the record from the revocation hearing does not show any prejudice to Wade by the length of time between the filing of the motion to revoke and the revocation hearing (a deficiency directly related to his failure to object in the trial court). In fact, there is some indication Wade did not turn himself in or request a revocation hearing precisely because he did not want to return to jail. Wade apparently preferred the status quo. From the record developed at the revocation hearing we detect no violation of Wade's right to a speedy trial.

### Sufficiency of Evidence

■ Wade next contends the evidence is legally and factually insufficient to support the revocation of his community supervision. The decision whether to continue or revoke community supervision is within the trial court's discretion. *Wester v. State,* 542 S.W.2d 403, 405 (Tex.Crim. App.1976); *Allen v. State,* 946 S.W.2d 115, 116 (Tex.App.Texarkana 1997, no pet.). We review the trial court's ruling for abuse of discretion. *See Jackson v. State,* 645 S.W.2d 303, 305 (Tex.Crim.App.1983); *Lopez v. State,* 46 S.W.3d 476, 481 (Tex.App.-Fort Worth 2001, pet. ref'd).

■ The trial court cannot revoke community supervision without a showing the defendant violated a condition of his or her supervision. *DeGay v. State,* 741 S.W.2d 445, 449 (Tex.Crim.App.1987); *Allen,* 946 S.W.2d at 116. When there is sufficient evidence to support a finding the defendant violated a condition of his or her supervision, the trial court does not abuse its discretion by revoking community supervision. *See Cardona v. State,* 665 S.W.2d 492, 493–94 (Tex.Crim.App.1984);

*Stevens v. State,* 900 S.W.2d 348, 351 (Tex. App.-Texarkana 1995, pet. ref'd). Proof of a single violation is sufficient to support revocation of community supervision. *O'Neal v. State,* 623 S.W.2d 660, 661 (Tex. Crim.App.1981); *Myers v. State,* 780 S.W.2d 441, 445 (Tex.App.Texarkana 1989, pet. ref'd).

In the present case, the evidence showed Wade failed to notify his supervision officer that he was being extradited to Arkansas from Tennessee in 1996, that he was in jail in Arkansas in 1996, or that he was living in Arkansas after 1996. Further, Wade admitted he did not pay his supervision fees, fines, court costs, or court-appointed attorney costs, even after he was released from jail in Arkansas in 1996. In fact, when asked whether there was any reason he could not pay these fees between 1996 and 1999, Wade testified, "No, sir. I should have been paying." Proof of these violations is sufficient to support the trial court's decision to revoke Wade's community supervision.

The judgment is affirmed.