In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00185-CR


______________________________





ALBERT RANDON, Appellant




V.




THE STATE OF TEXAS, Appellee





 


On Appeal from the 23rd Judicial District Court


Brazoria County, Texas


Trial Court No. 21,111




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Albert Randon appeals the trial court's assessment of ten years' imprisonment after
it revoked his community supervision. Randon contends the trial court erred in sentencing
him based on an erroneous finding that he failed to pay his monthly supervision fee for
May and June 1998 because the trial court waived that condition of his community
supervision in 1991.

 On December 19, 1990, Randon pled guilty to delivery of cocaine. The trial court
placed Randon on community supervision for a period of ten years. As conditions of his
community supervision, the trial court required Randon to pay a monthly supervision fee
of $35.00 on the 19th day of each month and to commit no new criminal offense. On
February 21, 1991, the trial court waived the requirement in this case that Randon pay the
monthly supervision fee. 

 In August 1998, the State filed an application to revoke Randon's community
supervision alleging (1) he failed to commit no new offense against the laws of Texas, and
(2) he failed to pay his supervision fee in May and June of 1998 as previously directed by
the trial court. A hearing on the State's motion was held in conjunction with a jury trial on
a separate indictment for aggravated sexual assault of a child (also on appeal in a
separate case to this Court in appellate cause number 06-01-00183-CR) and a motion to
revoke his community supervision for possession of cocaine in another case (also on
appeal in a separate case to this Court in appellate cause number 06-01-00184-CR). (1) 
Randon pled "not true" to the allegations. The trial court found both allegations in the
State's petition to be true and imposed a sentence of ten years' imprisonment, with
Randon's sentence to be served concurrently with his sentences in the other two cases.

 A trial court has broad discretion in imposing conditions of community supervision. 
Quisenberry v. State, 88 S.W.3d 745, 749 (Tex. App.-Waco 2002, pet. ref'd). We review
a trial court's decision to revoke community supervision under an abuse of discretion
standard. Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). When there
is sufficient evidence to support a finding the defendant violated a condition of his or her
community supervision, the trial court does not abuse its discretion by revoking the
supervision. Wade v. State, 83 S.W.3d 835, 839-40 (Tex. App.-Texarkana 2002, no pet.). 
"Proof of a single violation is sufficient to support revocation of community supervision." 
Id. at 840. A trial court must not, however, consider allegations against the defendant
which are either untrue or are otherwise barred for consideration by principles of due
process. Cf. In re J.L.D., 74 S.W.3d 166, 169-70 (Tex. App.-Texarkana 2002, no pet.)
(trial court violated juvenile's due process rights by revoking probation based on same
assaultive conduct for which the court had previously modified juvenile's probation).

 As a condition of his community supervision, the trial court ordered Randon to pay
a $35.00 supervision fee on the 19th day of each month during the entire period of
community supervision. But the trial court waived that condition of community supervision
February 21,1991, at the request of Randon and his supervision officer. Therefore, we find
the trial court erred by ruling Randon violated condition "R" of his community supervision. 
Finding error, however, does not end our review. If error is found, we must analyze the
error to determine harm. Tex. R. App. P. 44.2.

 Rule 44.2 of the Texas Rules of Appellate Procedure provides the possible options
for analyzing harm:

 (a) Constitutional Error. If the appellate record in a criminal case
reveals constitutional error that is subject to harmless error review, the court
of appeals must reverse a judgment of conviction or punishment unless the
court determines beyond a reasonable doubt that the error did not contribute
to the conviction or punishment.


 (b) Other Errors. Any other error, defect, irregularity, or variance that
does not affect substantial rights must be disregarded.


Tex. R. App. P. 44.2.

 The trial court found Randon had violated the terms of his community supervision
by committing a new crime and by failing to pay a $35.00 supervision fee for the last two
months of his community supervision. With respect to the latter finding (that Randon failed
to pay his supervision fee), we have already found the trial court erred. Randon's brief
directs the Court's attention to no authority that suggests this error is of constitutional
dimension. Even if we were to find the error constitutional, we would not find the error
harmful. Prior to assessing punishment, the trial court stated:

 I'm fixing to sentence you on all three cases. I will sentence you to
serve - I will run these sentences concurrent. I'm not going to stack any of
these because I took into consideration the prior incident in Cause 35,327,
that was just tried [on the indictment for aggravated sexual assault, appealed
as appellate cause number 06-02-00183-CR], and the fact that your
probation was violated primarily by the commission of the aggravated sexual
assault.


(Emphasis added.)

 Considering that proof of a single violation is sufficient to support revocation of
community supervision, together with the rather minor nature of the alleged failure to pay
two monthly supervision fees, as compared with the seriousness of the alleged commission
of aggravated sexual assault, and the finding by the trial court that it was revoking
Randon's community supervision based primarily on the commission of the new offense,
we cannot say the court's erroneous finding that he also failed to make two supervision fee
payments contributed to the trial court's sentence. Neither did it affect Randon's
substantial rights. 

 We overrule Randon's sole point of error and affirm the trial court's judgment.



 Donald R. Ross

 Justice


Date Submitted: February 21, 2003
Date Decided: March 10, 2003



Do Not Publish
1. The issues raised in the other two appellate cases are addressed in separate
opinions. See Randon v. State, No. 06-01-00183-CR (Tex. App.-Texarkana Mar. 10,
2003, no pet. h.); Randon v. State, No. 06-01-00184-CR (Tex. App.-Texarkana Mar. 10,
2003, no pet. h.).



e"
 UnhideWhenUsed="false" Name="Medium Shading 1 Accent 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00016-CR

                                                ______________________________

 

 

                                       KEITH EARL
JONES, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 3rd Judicial District Court

                                                          Anderson
County, Texas

                                                            Trial
Court No. 30095

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Keith Earl Jones made the
unfortunate decision to take to the road after drinking a few beers.  The hefty consequence of this poor decision
led to a significant accident with a vehicle driven by Jo Green, as well as
Jones third DWI charge.  Jones appeals[1] his conviction of DWI third or
more, repeat offender, and his sentence of sixty years imprisonment, which was
assessed pursuant to enhancement paragraphs alleging Jones had previously
committed the offenses of delivery of a controlled substance and voluntary
manslaughter.  Jones argues that the
evidence was insufficient to support his conviction and punishment enhancements
and that the trial court erred in admitting an unsupported prior conviction
[of voluntary manslaughter] attributed to the Defendant during the punishment
phase of the trial.  We affirm the trial
courts judgment because we find the evidence sufficient to support Jones
conviction and enhancements, and hold there was no error in admitting the prior
conviction.  

I.          Legally
Sufficient Evidence Supports the Finding of Guilt

            In evaluating legal sufficiency of
the evidence to prove the charged offense, we review all the evidence in the
light most favorable to the trial courts judgment to determine whether any
rational jury could have found the essential elements of DWI third or more
beyond a reasonable doubt.  Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd).  Our rigorous
legal sufficiency review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 917 (Cochran, J., concurring). 
We examine legal sufficiency under the direction of Brooks, while giving deference to the responsibility of the jury
to fairly resolve conflicts in testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).[2]

            Legal sufficiency of the evidence is
measured by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Vega v. State, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008).  A person commits the offense if he or she is
intoxicated while operating a motor vehicle in a public place.  Tex.
Penal Code Ann. § 49.04(a) (West Supp. 2011).  Intoxicated means (A) not having the
normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two
or more of those substances, or any other substance into the body; or (B)
having an alcohol concentration of 0.08 or more.  Tex.
Penal Code Ann. § 49.01(2)(A), (B) (West 2011).  The indictment alleged Jones was intoxicated
by reason of introduction of alcohol, a controlled substance, a drug, a
dangerous drug, or a combination into the body. 
The State also alleged that Jones had twice been previously convicted of
DWI, meeting the jurisdictional requirements of Section 49.09 used to elevate
the offense to a third degree felony.  Tex. Penal Code Ann. § 49.09(b)(2)
(West Supp. 2011). 

            Thus, under a hypothetically correct
charge in this case, the jury was required to find, beyond a reasonable doubt,
that (1) Jones, (2) operated a motor vehicle, (3) in a public place, (4) while
intoxicated:  not having the normal use
of mental or physical faculties, (5) due to the introduction of alcohol or
other substances into the body, and (6) that Jones had previously been
convicted two times of an offense relating to the operating of a motor
vehicle while intoxicated.[3]  Tex.
Penal Code Ann. §§ 49.01(2)(A), 49.04(a), 49.09(b).  Complaining only that he was not intoxicated,
Jones contends the evidence was insufficient to prove the fourth element.

            Approximately two hours after the accident,
Jones was transported to the hospital, where a blood test reported his blood
alcohol level (BAL) at 0.07.  Considering
the passage of time between the collision and the blood draw, responding
officer Damian Conner testified that Jones must have had a BAL of 0.08 or more
at the time of collision.  Jones
complains that such extrapolation is insufficient to prove the offense and
recites that [t]here must be some other evidence in the record that would
support an inference that the Defendant was intoxicated at the time of
driving.  

            But here, the indictment required
that the State prove that Jones did not have the normal use of his mental or
physical faculties by reason of introduction of a substance, not that his BAL was
0.08 or more.  There is ample evidence to
support such a finding.  Green testified
that she was traveling northbound on a county road when she observed Jones
Dodge pickup truck traveling southbound at a high rate of speed in her lane
of travel.  Although Green took evasive
action and moved 4 feet off the road, Jones violently collided with, and
totaled, Greens car.  Jones approached
Green after the accident.  Green
testified, He was walking around, staggering around, and described him as
having slurred speech and bloodshot eyes. 
Firefighter and paramedic David Giles testified that Jones smelled of
alcohol and that he admitted that he had been drinking.  Conner also smelled a very strong odor of
alcohol upon speaking to Jones, observed his slurred speech and sluggish
demeanor, and decided to administer field sobriety tests.  

            Prior to administration of these
tests, Jones admitted to Conner that he had a few beers.  The admission was confirmed by a portable
breath test.  Conner noted that Jones
possessed a lack of smooth pursuit during the horizontal gaze nystagmus test, which led to the presence of four out of
six clues of intoxication.  A video of
the field sobriety tests being conducted, admitted for the jurys review,
depicts Jones swaying slightly during the examination.  Conner recorded two out of eight clues during
the walk-and-turn test, and found that Jones used his arms for balance during
the one-legged stand test.  Jones told
Conner that he was not sure if he could walk a straight line or complete the
one-legged stand test.  Conner concluded
that Jones was intoxicated. 

            When viewed in the light most
favorable to the verdict, the testimony, and the reality that an accident had occurred,
there was sufficient evidence for a rational jury to find that Jones was
driving at a time when he did not have the normal use of his mental or physical
faculties as a result of alcohol intoxication. 


            Jones argues that the evidence was
insufficient because the theory that he caused the accident was based upon the
brief observations of Ms. Green, who surprisingly recited typical DPS
jargon.  He continues, The accident,
with the observations of Ms. Green, and the general vague reconstruction
provided by Trooper Conner, could have as reasonably been a result of speed and
lane position, as it could have been by intoxication.  Jones described the testimony as based upon
conjecture, and post incident observations. 
These arguments involve the credibility of witnessesa matter left
strictly to the fact-finder.  

            The evidence is sufficient to
support the finding of guilt.  Jones
first point of error is overruled.  

II.        Sufficient
Evidence Supports the Finding of True to Enhancements 

            The State sought to enhance Jones
punishment from that of a third degree felony to a range of punishment from
twenty-five to ninety-nine years or life imprisonment by alleging Jones had
previously committed the offenses of delivery of a controlled substance and
voluntary manslaughter.  Tex. Penal Code Ann. § 12.42(d) (West Supp.
2011).  Jones objected to the admission
of pen packets on the basis that the State failed to properly prove that he was
linked to the prior convictions.  The
objection was overruled.  Jones contends
that this was error and that the evidence was insufficient to prove the
enhancements. 

            The State had the burden to prove
that Jones was the same person convicted of each of the prior felonies. 
Flowers v. State, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); Beck v. State, 719 S.W.2d 205, 210 (Tex.
Crim. App. 1986) (It is incumbent on the State to go forward and show by independent
evidence that the defendant is the person so previously convicted.).  Absent evidence linking the defendant to the
prior convictions, evidence of the prior convictions cannot be used to enhance
the punishment.  Benton v. State, 336 S.W.3d 355, 357 (Tex. App.Texarkana 2011,
pet. refd).  The
determination of whether sufficient evidence links the defendant to the prior
conviction is made on a case-by-case basis. 
Human v. State, 749 S.W.2d
832, 83536 (Tex. Crim. App. 1988).  

            No specific document or mode of
proof is required to prove the link.  Flowers, 220 S.W.3d at 921.  The State is entitled to use circumstantial
evidence to prove the defendant is the same person named in the alleged prior
convictions, and proof may be made in a number of different ways.  Id.;
Human, 749 S.W.2d at 83536,
839.  For example, the State can meet its
burden by introducing multiple documents that when read together, contain
sufficient information to establish both the existence of the prior conviction
and the defendants identity as the person convicted.  Flowers,
220 S.W.3d 92122.  It was the
fact-finders province to determine the question of whether Jones was the
person convicted of the prior felony offenses. 
Id. at 923.  Thus, it was proper for the trial court to
admit the pen packets. 

            We now examine the evidence linking
Jones to the prior convictions.  The pen
packet labeled as States exhibit 13 contained a 1989 judgment revoking
community supervision for the offense of voluntary manslaughter, and recited
that Keith Jones was convicted of the offense in Houston County, Texas, by
the 349th Judicial District Court.  The
pen packet included a picture purporting to be a youthful Jones, and
fingerprints of Keith Earl Jones. 
States exhibit 14 was a pen packet containing a 1998 judgment, also
from the 349th Judicial District Court, revoking community supervision for the
offense of delivery of a controlled substance committed by Keith Jones.  A picture purporting to be Jones and a fingerprint
card of Keith Earl Jones was also included in this pen packet.  

            Fingerprint analyst Christopher
Dobbs took fresh prints from Jones and testified that they matched the
fingerprints taken in States exhibit 14.  Dobbs also conducted a comparison with the
fingerprints in States exhibit 13. 
However, he was unable to form an opinion as to whether the prints could
be considered a match.  Specifically,
Dobbs testified he was able to match some characteristics of the fingerprints
to Jones fresh prints, but he was not comfortable forming a definitive opinion
based on the fingerprint card provided. 
However, Dobbs compared the photographs in States exhibit 13 with the
photograph in exhibit 14 and concluded that they appeared to be of Jones.  

            The jury heard Dobbs testimony that
Jones fresh prints matched exhibit 14. 
It was provided with both pen packets and could conduct its own
comparison of the photographs with each other as well as comparing them to the
defendant in the courtroom.  While it is
theoretically possible that another person with the same first, middle, and
last name, who looked exactly like Jones was convicted three times in the same
District Court in Houston County, Texas, it is certainly a rational decision by
the jury that beyond a reasonable doubt, Jones was the same person identified
in both of the pen packets.  Therefore,
we find the evidence sufficient to prove the enhancements. 

            Jones last point of error is
overruled. 

III.       Conclusion


            We affirm the trial courts judgment. 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          November 14, 2011

Date
Decided:             December 2, 2011

 

Do Not
Publish

 











[1]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Govt Code Ann. § 73.001 (West 2005).  We are unaware of any conflict between precedent
of the Twelfth Court of Appeals and that of this Court on any relevant
issue.  See Tex. R. App. P.
41.3.





[2]Jones
urges this Court to return to the standard of review as espoused in Clewis v. State, 922 S.W.2d 126 (Tex. Crim.
App. 1996), which included a review for factual sufficiency of the
evidence.  Clewis was expressly overruled by the Texas Court of Criminal Appeals in Brooks, 323 S.W.3d at 995.  Accordingly, we decline to apply Clewis to this case.






[3]Jones
stipulated to the two prior DWI convictions.