02-11-211-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.  02-11-00211-CR

 

 


 
 
 Daniel David Bookhamer
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 355th
District Court OF Hood COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

Pursuant
to a plea bargain, Appellant Daniel David Bookhamer pleaded guilty to indecency
with a child, and the trial court placed him on ten years’ community
supervision.  The State subsequently filed a motion to revoke
Appellant’s community supervision, alleging seven violations, including that
Appellant had viewed pornographic material on his iPhone in violation of
conditions that prohibited him from possessing sexually explicit material or
using or possessing a computer with internet access without prior approval of
his supervision officer.  Appellant pleaded not true to all of the State’s
allegations. After hearing testimony and argument from counsel, the trial court
found five of the allegations true and sentenced Appellant to eight years’
confinement. Appellant contends in two points that the trial court abused its
discretion by finding the State’s allegations true and that certain terms and
conditions of his community supervision were too vague and indefinite to be
enforced.  We affirm.

II. 
Background

At
the revocation hearing, Bob Hayworth testified that he is Appellant’s Hood
County community supervision officer and that he had supervised Appellant for
approximately four years.  Hayworth testified that, in a January 2011
conversation, Appellant admitted to receiving an iPhone as an upgrade, to
looking for and finding sexually explicit material on the iPhone, and to
masturbating to that material.  Appellant was not positive of when this
incident occurred but told Hayworth that it occurred in February or March
2010.  Appellant told Hayworth that he had “looked into a site that had men and
women having sex, and he masturbated to it.”  Hayworth opined that this act was
a violation of Appellant’s community supervision conditions because it involved
internet access through the iPhone.  Hayworth recommended that Appellant’s
community supervision be revoked because this was Appellant’s second violation
despite his having been in counseling for more than three years.[2] 
On cross-examination, Hayworth agreed that six of the State’s allegations
related to the same incident in that Appellant had described one event to
several people.  Hayworth also agreed that the incident occurred almost a year
before the State filed its motion to revoke and that he was not aware of any
other times that Appellant had violated the terms of his community
supervision.  In addition, Hayworth testified that looking at pornography can
constitute looking at sexually explicit material and that Appellant, by viewing
pornography, violated a condition of his community supervision.

Daniel
Galvan is a community supervision officer for Johnson and Somervell Counties.[3] 
Galvan testified that he had asked Appellant during a field visit in 2009 to
produce his iPhone to confirm that it had software on it to block internet
access.  Galvan testified that he made the request of Appellant because the community
supervision department considers an iPhone to be a computer for purposes of
internet access and because a condition of Appellant’s community supervision is
to have computer monitoring on any computers that he uses.  Upon inspection,
Galvan determined that internet access on Appellant’s iPhone was
password-restricted and that Appellant did not have the password.

Yolanda
Slawson works as a Johnson County community supervision officer and is
Appellant’s primary community supervision officer.  She confirmed that
Appellant had an internet-block on his iPhone in the summer of 2010.  However,
Slawson testified that she learned while reviewing Appellant’s most recent
polygraph examination that Appellant had received a software upgrade on his
iPhone, that his internet-block was removed by the software upgrade, and that
Appellant did not have an internet-block on his iPhone for a short time.  Slawson
testified that she had previously discussed with Appellant his prohibition
against having unfiltered internet access.  She also testified that Appellant
admitted viewing sexually explicit material on his iPhone, specifically “some
videos, some pictures of Girls Gone Wild, and some other sexual[ly] explicit
[material] dealing with eBay.”[4]  Slawson testified that
Appellant had not received her permission or approval to view sexually explicit
material on his iPhone and that doing so was a violation of the terms of his
community supervision.  Slawson confirmed, however, that Appellant did not have
any other violations of the terms of his community supervision.

Lawrin
Dean is a licensed professional counselor and sex offender treatment provider,
and she testified that she had served as Appellant’s counselor since
approximately June 2007.  Dean testified that she and Appellant have addressed
his dynamic risk factors in treatment and that for him, viewing pornography or
sexually explicit material is a dynamic risk factor.  Dean also testified that
Appellant knows “without a doubt” that viewing pornography or sexually explicit
material is “one of his triggers” because Appellant had told her so and because
they had discussed it as the primary focus of his therapy.  She also testified
that, for a sexual offender, viewing bare-breasted women constitutes viewing
sexually explicit material.

Dean
also described Appellant’s admitting to her that he had accessed the internet
using his iPhone.  Appellant told Dean that he had unfiltered internet access
for approximately one week and that he performed internet searches for
“breasts,” “women showing cleavage,” “topless women,” and “pornography.”  Appellant
also told Dean that he had seen “an animated looping clip of a man and woman,
genitalia showing, having sexual intercourse.”  Dean also testified that
Appellant told her that he had searched eBay for “artistic nudity.”

Dean
testified that she discharged Appellant from therapy in February 2011 because
“treatment [was] not working for him,” primarily because Appellant had not been
honest with her about his viewing sexually explicit material and because his
conduct suggested that he did not want to change.  Dean also testified that she
continued Appellant’s therapy until he was arrested for the community
supervision violation because she felt it was clinically important to continue
his treatment until he was removed from the community at large.

On
cross-examination, Dean agreed that Appellant’s group participation was good
throughout his four years’ of therapy, that his attendance was very good, and
that he had passed his latest polygraph examination.  However, Dean expressed
concern that Appellant did not admit until October, November, or December 2010 that
he had viewed pornographic material in May 2010.

Appellant
testified that a community supervision officer installed a monitor on his home
computer and that no one had reported any violations to him.  Appellant further
testified that, in February 2010, his iPhone was connected to his computer,
that the iTunes program automatically downloaded a software upgrade to his
iPhone, that the download caused his iPhone to “crash,” and that a factory
reset was required to repair the phone.  However, the factory reset removed all
of the information that had previously been saved on his iPhone, including the
internet blocking program.  Appellant testified that his phone was without a
blocking program for approximately four days before his chaperone, Ritt West,
reinstalled the program.  Appellant admitted that, during that period, he
searched for “artistic nude” on eBay and that he found models, pictures, and
paintings of nude women, but Appellant testified that he did not perceive the
images to be pornography.

Appellant
testified that he voluntarily removed his television from his home to avoid
inadvertently viewing sexual content.  He described the “Girls Gone Wild” video
as an infomercial that he watched for one or two minutes, and he testified,
“The infomercial was of — of women in bars, and they were, you know, coerced to
show their breasts, lifting up their shirts, and — but everything was blocked
out.”  Appellant also testified that he had borrowed a movie from his sister
and that a preview on the DVD had a scene involving a topless woman.  Appellant
admitted recording the scene and “looping” it so that it would play
repeatedly.  Appellant also admitted knowing that his community supervision
terms required that he not look at pornography or sexually explicit material. 
He explained that he did not know that the items he viewed were pornographic or
sexually explicit.  However, Appellant denied an interest in art or Greek
sculpture and admitted that he searched on eBay for artistic nudity because he
intended to view things that would sexually arouse him.

Ritt
West is Appellant’s stepfather and one of his chaperones.  He testified that he
had set the password on Appellant’s iPhone to block Appellant’s internet access
and that Appellant did not know the password.  West explained that when
Appellant’s iPhone crashed after the software update, Appellant called him to
reset the password, but West was in California at the time and was not able to
reset the password for three or four days.

West
also testified that Appellant has worked very hard to comply with the terms of
his community supervision and that his efforts are evident.  For example,
Appellant will ask West to drive a different route to avoid places where
children are likely to be and will use West as a buffer, placing West between
himself and any children when they are in public.  Dorinda West (Appellant’s
mother), John Johnson (Appellant’s business partner), and April Manint
(Appellant’s friend and former girlfriend) also testified on Appellant’s
behalf.  Their testimony is consistent with that by Mr. West.

III. 
Standard of Review

Appellate
review of an order revoking community supervision is limited to determining
whether the trial court abused its discretion.  Rickels v. State, 202
S.W.3d 759, 763 (Tex. Crim. App. 2006); Miles v. State, 343 S.W.3d 908,
912 (Tex. App.—Fort Worth 2011, no pet.).  The State must prove by a
preponderance of the evidence that the defendant violated the terms and
conditions of community supervision.  Rickels, 202 S.W.3d at 763.  The
State satisfies this burden when the greater weight of the credible evidence
before the court creates a reasonable belief that it is more probable than not
that the defendant has violated a condition of his community supervision as
alleged in the State’s motion.  Id. at 763–64; Cobb v. State, 851
S.W.2d 871, 873 (Tex. Crim. App. 1993).  The trial court is the sole judge of
the credibility of the witnesses and the weight to be given their testimony,
and we review the evidence in the light most favorable to the trial court’s
ruling.  Miles, 343 S.W.3d at 912 (citing Cardona v. State, 665
S.W.2d 492, 493 (Tex. Crim. App. 1984); Allbright v. State, 13 S.W.3d
817, 819 (Tex. App.—Fort Worth 2000, no pet.)).  When there is sufficient
evidence to support a finding that the defendant violated a condition of his
community supervision, the trial court does not abuse its discretion by
revoking the supervision.  See Cardona, 665 S.W.2d at 493–94; Wade v.
State, 83 S.W.3d 835, 839–40 (Tex. App.—Texarkana 2002, no pet.).

IV. 
Violation of Community Supervision Conditions

Appellant
contends in his first point that the trial court abused its discretion by
revoking his community supervision because insufficient evidence supported the
trial court’s findings that he violated the conditions of his community supervision.
 Because a finding of a single violation of community supervision
is sufficient to support revocation, we need only address whether there is
sufficient evidence that Appellant violated condition number twenty-five of the
terms and conditions of his community supervision.  See Leach v. State,
170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref’d); see also
Tex. R. App. P. 47.1.

Condition
twenty-five of Appellant’s community supervision required in part that he not “purchase,
own or possess sexually explicit materials.”  Appellant argues that the State
alleged in the motion to revoke only that he possessed pornography, that the
State did not allege that he possessed sexually explicit material, and that
there is no evidence that he violated condition number twenty-five as written. 
This court recently explained that “a variance between the pleadings and proof
at a probation revocation hearing is material only if it operated to the
defendant’s surprise or prejudiced his rights” and that “[t]he burden to show
surprise or prejudice resulting from a variance rests with the defendant.”  Steinberger
v. State, No. 02-11-00269-CR, 2012 WL 662363, at *3 (Tex. App.—Fort Worth
Mar. 1, 2012, no pet. h.); see Chacon v. State, 558 S.W.2d 874, 876
(Tex. Crim. App. 1977) (“It is well settled that allegations in a revocation
motion need not be made with the same particularity of an indictment although
such allegations must be specific enough to give the accused notice of alleged
violation of law contrary to conditions of probation.”); Pierce v. State,
113 S.W.3d 431, 439 (Tex. App.—Texarkana 2003, pet. ref’d) (holding variance
between allegation in motion to revoke and proof at revocation hearing not
material because it did not operate to the defendant’s surprise).  Appellant
does not argue that he was surprised or prejudiced by the State’s allegation
that he possessed pornography, and he has thus not met his burden to show that
the alleged variance between the motion to revoke and the proof at the hearing
prejudiced or surprised him.  See Steinberger, 2012 WL 662363, at *3.

Appellant
also argues that there is no evidence that he purchased, owned, or possessed
sexually explicit materials.  When making this argument to the trial court, Appellant
offered into evidence copies of penal code sections 33.021 and 43.25.  In
relevant part, penal code section 33.021(a)(3) provides that “‘sexually
explicit’ means any communication, language, or material, including a
photographic or video image, that relates to or describes sexual conduct, as
defined by Section 43.25.”  Tex. Penal Code Ann. § 33.021(a)(3) (West 2011). 
Section 43.25 in turn defines “sexual conduct” in part as including “sexual
contact” and “actual or simulated sexual intercourse.”  Id. §
43.25(a)(2) (West 2011).  The trial court heard testimony that Appellant used
his iPhone to view a video clip “of a man and woman, genitalia showing, having
sexual intercourse.”  That video clip is sexually explicit as defined by penal
code sections 33.021(a)(3) and 43.25(a)(2).  See id. §§ 33.021(a)(3),
43.25(a)(2).  As the sole judge of the credibility of the witnesses and the
weight to be given their testimony, the trial court could have reasonably
determined that Appellant violated condition number twenty-five of his
community supervision by possessing sexually explicit material when he viewed
this video clip on his iPhone.  See Cobb, 851 S.W.2d at 873; Miles,
343 S.W.3d at 912.  Thus, we need not decide whether the other
images or videos Appellant is alleged to have seen constitute sexually explicit
material.  See Tex. R. App. P. 47.1; see also Leach,
170 S.W.3d at 672 (stating that “[p]roof by a preponderance of the evidence of
any one of the alleged violations of the conditions of community supervision is
sufficient to support a revocation order”).  We therefore overrule
Appellant’s first point.

V. 
Clarity of Community Supervision Conditions

Appellant
contends in his second point that certain terms and conditions of his community
supervision were too vague and indefinite to be enforced.  Specifically,
Appellant argues that his community supervision was revoked because he
possessed pornographic material when his community supervision conditions
prohibited him from possessing sexually explicit material and that the
witnesses at the revocation hearing provided differing explanations of what
material would violate Appellant’s community supervision.

Appellant
points specifically to condition number twenty-five, which provides in part
that Appellant “shall not purchase, own or possess sexually explicit
materials.”  Appellant contends that this condition, as written, failed to give
him adequate notice of what it required because of the confusion allegedly
apparent from the witness testimony at the revocation hearing concerning the
difference, if any, between pornography and sexually explicit material.

The appellate record does not
contain any indication that Appellant objected to or otherwise complained about
the conditions of his community supervision either at the revocation hearing or
when the conditions were imposed in April 2007.  See Speth v. State, 6
S.W.3d 530, 535 (Tex. Crim. App. 1999) (holding complaint concerning community
supervision conditions may not be raised for first time on appeal), cert. denied,
529 U.S. 1088 (2000); Camacho v. State, No. 02-03-00032-CR, 2004 WL
362376, at *1 (Tex. App.—Fort Worth Feb. 26, 2004, no pet.) (mem. op., not
designated for publication) (holding vague and ambiguous challenge to community
supervision condition not preserved because not raised by direct appeal
following imposition of community supervision).  Appellant has therefore not
preserved this complaint for appellate review.  Even if this complaint were
preserved, Appellant admitted knowing that his community supervision terms
required that he not look at pornography or sexually explicit material and that
the trial court ordered Appellant confined for fifty days in 2009 for looking
at pornographic images.  Appellant thus knew that the trial court considered it
a violation of his community supervision to look at pornographic images. 
Moreover, Appellant signed a treatment contract in May 2007 that provided,
among other things:  “I agree to not possess or intentionally view any sexually
explicit (or pornographic) material.”  Appellant was therefore on notice at the
beginning of his community supervision that his counselor considered sexually
explicit material to include pornographic material.  Appellant has thus not
shown that condition number twenty-five was too vague or indefinite to be enforced. 
We overrule Appellant’s second point.

VI. 
Conclusion

Having
overruled each of Appellant’s two points, we affirm the trial court’s order
revoking Appellant’s community supervision.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 3, 2012 









[1]See Tex. R. App. P. 47.4.





[2]In 2009, the trial court
ordered Appellant confined for fifty days for viewing pornography but did not
revoke his community supervision.





[3]The record is not clear as
to the reasons for Appellant having more than one community supervision
officer.





[4]Slawson later elaborated
that “Girls Gone Wild is considered to be sexually explicit material.  There
are young ladies who are topless.”