

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00211-CR

---

DANIEL DAVID BOOKHAMER            APPELLANT

V.

THE STATE OF TEXAS            STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Pursuant to a plea bargain, Appellant Daniel David Bookhamer pleaded guilty to indecency with a child, and the trial court placed him on ten years' community supervision. The State subsequently filed a motion to revoke Appellant's community supervision, alleging seven violations, including that Appellant had viewed pornographic material on his iPhone in violation of

---

[1]*See* Tex. R. App. P. 47.4.

conditions that prohibited him from possessing sexually explicit material or using or possessing a computer with internet access without prior approval of his supervision officer. Appellant pleaded not true to all of the State's allegations. After hearing testimony and argument from counsel, the trial court found five of the allegations true and sentenced Appellant to eight years' confinement. Appellant contends in two points that the trial court abused its discretion by finding the State's allegations true and that certain terms and conditions of his community supervision were too vague and indefinite to be enforced. We affirm.

## II. Background

At the revocation hearing, Bob Hayworth testified that he is Appellant's Hood County community supervision officer and that he had supervised Appellant for approximately four years. Hayworth testified that, in a January 2011 conversation, Appellant admitted to receiving an iPhone as an upgrade, to looking for and finding sexually explicit material on the iPhone, and to masturbating to that material. Appellant was not positive of when this incident occurred but told Hayworth that it occurred in February or March 2010. Appellant told Hayworth that he had "looked into a site that had men and women having sex, and he masturbated to it." Hayworth opined that this act was a violation of Appellant's community supervision conditions because it involved internet access through the iPhone. Hayworth recommended that Appellant's community supervision be revoked because this was Appellant's second violation despite his

2

having been in counseling for more than three years.[2] On cross-examination, Hayworth agreed that six of the State's allegations related to the same incident in that Appellant had described one event to several people. Hayworth also agreed that the incident occurred almost a year before the State filed its motion to revoke and that he was not aware of any other times that Appellant had violated the terms of his community supervision. In addition, Hayworth testified that looking at pornography can constitute looking at sexually explicit material and that Appellant, by viewing pornography, violated a condition of his community supervision.

Daniel Galvan is a community supervision officer for Johnson and Somervell Counties.[3] Galvan testified that he had asked Appellant during a field visit in 2009 to produce his iPhone to confirm that it had software on it to block internet access. Galvan testified that he made the request of Appellant because the community supervision department considers an iPhone to be a computer for purposes of internet access and because a condition of Appellant's community supervision is to have computer monitoring on any computers that he uses. Upon inspection, Galvan determined that internet access on Appellant's iPhone was password-restricted and that Appellant did not have the password.

---

[2]In 2009, the trial court ordered Appellant confined for fifty days for viewing pornography but did not revoke his community supervision.

[3]The record is not clear as to the reasons for Appellant having more than one community supervision officer.

3

Yolanda Slawson works as a Johnson County community supervision officer and is Appellant's primary community supervision officer. She confirmed that Appellant had an internet-block on his iPhone in the summer of 2010. However, Slawson testified that she learned while reviewing Appellant's most recent polygraph examination that Appellant had received a software upgrade on his iPhone, that his internet-block was removed by the software upgrade, and that Appellant did not have an internet-block on his iPhone for a short time. Slawson testified that she had previously discussed with Appellant his prohibition against having unfiltered internet access. She also testified that Appellant admitted viewing sexually explicit material on his iPhone, specifically "some videos, some pictures of Girls Gone Wild, and some other sexual[ly] explicit [material] dealing with eBay."[4] Slawson testified that Appellant had not received her permission or approval to view sexually explicit material on his iPhone and that doing so was a violation of the terms of his community supervision. Slawson confirmed, however, that Appellant did not have any other violations of the terms of his community supervision.

Lawrin Dean is a licensed professional counselor and sex offender treatment provider, and she testified that she had served as Appellant's counselor since approximately June 2007. Dean testified that she and Appellant have addressed his dynamic risk factors in treatment and that for him, viewing

[4]Slawson later elaborated that "Girls Gone Wild is considered to be sexually explicit material. There are young ladies who are topless."

4

pornography or sexually explicit material is a dynamic risk factor. Dean also testified that Appellant knows "without a doubt" that viewing pornography or sexually explicit material is "one of his triggers" because Appellant had told her so and because they had discussed it as the primary focus of his therapy. She also testified that, for a sexual offender, viewing bare-breasted women constitutes viewing sexually explicit material.

Dean also described Appellant's admitting to her that he had accessed the internet using his iPhone. Appellant told Dean that he had unfiltered internet access for approximately one week and that he performed internet searches for "breasts," "women showing cleavage," "topless women," and "pornography." Appellant also told Dean that he had seen "an animated looping clip of a man and woman, genitalia showing, having sexual intercourse." Dean also testified that Appellant told her that he had searched eBay for "artistic nudity."

Dean testified that she discharged Appellant from therapy in February 2011 because "treatment [was] not working for him," primarily because Appellant had not been honest with her about his viewing sexually explicit material and because his conduct suggested that he did not want to change. Dean also testified that she continued Appellant's therapy until he was arrested for the community supervision violation because she felt it was clinically important to continue his treatment until he was removed from the community at large.

On cross-examination, Dean agreed that Appellant's group participation was good throughout his four years' of therapy, that his attendance was very

5

good, and that he had passed his latest polygraph examination. However, Dean expressed concern that Appellant did not admit until October, November, or December 2010 that he had viewed pornographic material in May 2010.

Appellant testified that a community supervision officer installed a monitor on his home computer and that no one had reported any violations to him. Appellant further testified that, in February 2010, his iPhone was connected to his computer, that the iTunes program automatically downloaded a software upgrade to his iPhone, that the download caused his iPhone to "crash," and that a factory reset was required to repair the phone. However, the factory reset removed all of the information that had previously been saved on his iPhone, including the internet blocking program. Appellant testified that his phone was without a blocking program for approximately four days before his chaperone, Ritt West, reinstalled the program. Appellant admitted that, during that period, he searched for "artistic nude" on eBay and that he found models, pictures, and paintings of nude women, but Appellant testified that he did not perceive the images to be pornography.

Appellant testified that he voluntarily removed his television from his home to avoid inadvertently viewing sexual content. He described the "Girls Gone Wild" video as an infomercial that he watched for one or two minutes, and he testified, "The infomercial was of — of women in bars, and they were, you know, coerced to show their breasts, lifting up their shirts, and — but everything was blocked out." Appellant also testified that he had borrowed a movie from his

sister and that a preview on the DVD had a scene involving a topless woman. Appellant admitted recording the scene and "looping" it so that it would play repeatedly. Appellant also admitted knowing that his community supervision terms required that he not look at pornography or sexually explicit material. He explained that he did not know that the items he viewed were pornographic or sexually explicit. However, Appellant denied an interest in art or Greek sculpture and admitted that he searched on eBay for artistic nudity because he intended to view things that would sexually arouse him.

Ritt West is Appellant's stepfather and one of his chaperones. He testified that he had set the password on Appellant's iPhone to block Appellant's internet access and that Appellant did not know the password. West explained that when Appellant's iPhone crashed after the software update, Appellant called him to reset the password, but West was in California at the time and was not able to reset the password for three or four days.

West also testified that Appellant has worked very hard to comply with the terms of his community supervision and that his efforts are evident. For example, Appellant will ask West to drive a different route to avoid places where children are likely to be and will use West as a buffer, placing West between himself and any children when they are in public. Dorinda West (Appellant's mother), John Johnson (Appellant's business partner), and April Manint (Appellant's friend and former girlfriend) also testified on Appellant's behalf. Their testimony is consistent with that by Mr. West.

7

### III. Standard of Review

Appellate review of an order revoking community supervision is limited to determining whether the trial court abused its discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Miles v. State*, 343 S.W.3d 908, 912 (Tex. App.—Fort Worth 2011, no pet.). The State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Rickels*, 202 S.W.3d at 763. The State satisfies this burden when the greater weight of the credible evidence before the court creates a reasonable belief that it is more probable than not that the defendant has violated a condition of his community supervision as alleged in the State's motion. *Id.* at 763–64; *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Miles*, 343 S.W.3d at 912 (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Allbright v. State*, 13 S.W.3d 817, 819 (Tex. App.—Fort Worth 2000, no pet.)). When there is sufficient evidence to support a finding that the defendant violated a condition of his community supervision, the trial court does not abuse its discretion by revoking the supervision. *See Cardona*, 665 S.W.2d at 493–94; *Wade v. State*, 83 S.W.3d 835, 839–40 (Tex. App.—Texarkana 2002, no pet.).

## IV. Violation of Community Supervision Conditions

Appellant contends in his first point that the trial court abused its discretion by revoking his community supervision because insufficient evidence supported the trial court's findings that he violated the conditions of his community supervision. Because a finding of a single violation of community supervision is sufficient to support revocation, we need only address whether there is sufficient evidence that Appellant violated condition number twenty-five of the terms and conditions of his community supervision. *See Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd); *see also* Tex. R. App. P. 47.1.

Condition twenty-five of Appellant's community supervision required in part that he not "purchase, own or possess sexually explicit materials." Appellant argues that the State alleged in the motion to revoke only that he possessed pornography, that the State did not allege that he possessed sexually explicit material, and that there is no evidence that he violated condition number twenty-five as written. This court recently explained that "a variance between the pleadings and proof at a probation revocation hearing is material only if it operated to the defendant's surprise or prejudiced his rights" and that "[t]he burden to show surprise or prejudice resulting from a variance rests with the defendant." *Steinberger v. State*, No. 02-11-00269-CR, 2012 WL 662363, at *3 (Tex. App.—Fort Worth Mar. 1, 2012, no pet. h.); *see Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977) ("It is well settled that allegations in a revocation motion need not be made with the same particularity of an indictment

9

although such allegations must be specific enough to give the accused notice of alleged violation of law contrary to conditions of probation."); *Pierce v. State*, 113 S.W.3d 431, 439 (Tex. App.—Texarkana 2003, pet. ref'd) (holding variance between allegation in motion to revoke and proof at revocation hearing not material because it did not operate to the defendant's surprise). Appellant does not argue that he was surprised or prejudiced by the State's allegation that he possessed pornography, and he has thus not met his burden to show that the alleged variance between the motion to revoke and the proof at the hearing prejudiced or surprised him. *See Steinberger*, 2012 WL 662363, at *3.

Appellant also argues that there is no evidence that he purchased, owned, or possessed sexually explicit materials. When making this argument to the trial court, Appellant offered into evidence copies of penal code sections 33.021 and 43.25. In relevant part, penal code section 33.021(a)(3) provides that "'sexually explicit' means any communication, language, or material, including a photographic or video image, that relates to or describes sexual conduct, as defined by Section 43.25." Tex. Penal Code Ann. § 33.021(a)(3) (West 2011). Section 43.25 in turn defines "sexual conduct" in part as including "sexual contact" and "actual or simulated sexual intercourse." *Id.* § 43.25(a)(2) (West 2011). The trial court heard testimony that Appellant used his iPhone to view a video clip "of a man and woman, genitalia showing, having sexual intercourse." That video clip is sexually explicit as defined by penal code sections 33.021(a)(3) and 43.25(a)(2). *See id.* §§ 33.021(a)(3), 43.25(a)(2). As the sole judge of the

10

credibility of the witnesses and the weight to be given their testimony, the trial court could have reasonably determined that Appellant violated condition number twenty-five of his community supervision by possessing sexually explicit material when he viewed this video clip on his iPhone. *See Cobb*, 851 S.W.2d at 873; *Miles*, 343 S.W.3d at 912. Thus, we need not decide whether the other images or videos Appellant is alleged to have seen constitute sexually explicit material. *See* Tex. R. App. P. 47.1; *see also Leach*, 170 S.W.3d at 672 (stating that "[p]roof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order"). We therefore overrule Appellant's first point.

## V. Clarity of Community Supervision Conditions

Appellant contends in his second point that certain terms and conditions of his community supervision were too vague and indefinite to be enforced. Specifically, Appellant argues that his community supervision was revoked because he possessed pornographic material when his community supervision conditions prohibited him from possessing sexually explicit material and that the witnesses at the revocation hearing provided differing explanations of what material would violate Appellant's community supervision.

Appellant points specifically to condition number twenty-five, which provides in part that Appellant "shall not purchase, own or possess sexually explicit materials." Appellant contends that this condition, as written, failed to give him adequate notice of what it required because of the confusion allegedly

11

apparent from the witness testimony at the revocation hearing concerning the difference, if any, between pornography and sexually explicit material.

The appellate record does not contain any indication that Appellant objected to or otherwise complained about the conditions of his community supervision either at the revocation hearing or when the conditions were imposed in April 2007. *See Speth v. State*, 6 S.W.3d 530, 535 (Tex. Crim. App. 1999) (holding complaint concerning community supervision conditions may not be raised for first time on appeal), *cert. denied*, 529 U.S. 1088 (2000); *Camacho v. State*, No. 02-03-00032-CR, 2004 WL 362376, at *1 (Tex. App.—Fort Worth Feb. 26, 2004, no pet.) (mem. op., not designated for publication) (holding vague and ambiguous challenge to community supervision condition not preserved because not raised by direct appeal following imposition of community supervision). Appellant has therefore not preserved this complaint for appellate review. Even if this complaint were preserved, Appellant admitted knowing that his community supervision terms required that he not look at pornography or sexually explicit material and that the trial court ordered Appellant confined for fifty days in 2009 for looking at pornographic images. Appellant thus knew that the trial court considered it a violation of his community supervision to look at pornographic images. Moreover, Appellant signed a treatment contract in May 2007 that provided, among other things: "I agree to not possess or intentionally view any sexually explicit (or pornographic) material." Appellant was therefore on notice at the beginning of his community supervision that his counselor considered

12

sexually explicit material to include pornographic material. Appellant has thus not shown that condition number twenty-five was too vague or indefinite to be enforced. We overrule Appellant's second point.

## VI. Conclusion

Having overruled each of Appellant's two points, we affirm the trial court's order revoking Appellant's community supervision.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 3, 2012

13